UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> CAO PENG, et al., <br><br> Defendants. | CASE NO. 2:23-cv-00607-TL-BAT <br><br> **ORDER GRANTING EXTENSION TO SERVE VIA THE HAGUE CONVENTION AND DENYING EMAIL SERVICE (DKT. 13)** |

On April 24, 2023, Plaintiffs filed a complaint alleging Defendants unlawfully sold products using unauthorized UL LCC ("UL Solutions") certification marks. Dkt. 1. The matter was referred to the undersigned on May 1, 2023. Dkt. 9. On May 2, 2023, the Court issued a pre-service scheduling order directing Plaintiffs to either serve the complaint, move for alternative service, or move for pre-service discovery by July 31, 2023. Dkt. 10.

On July 31, 2023, after the Court granted leave to file an overlength brief, Plaintiffs filed a motion to (1) extend the time to serve via the Hague Convention, Defendants Shenzhen Peng Chuangxing Technology Co., Ltd., Shenzhen Haiyongtao Electronics Co., Ltd., and Shenzhen Rictron Digital Technology Co., Ltd., and (2) grant alternative service via email on Defendants Cao Peng and Shenzhen Tongxin Technology Co. Ltd. Dkt. 13

The Court, having considered the motion and record, **GRANTS** Plaintiffs' motion to extend time to serve Defendants Shenzhen Peng Chuangxing Technology Co., Ltd., Shenzhen Haiyongtao Electronics Co., Ltd., and Shenzhen Rictron Digital Technology Co., Ltd. through the Hague Convention, and **ORDERS** Plaintiffs to either file proof service, move for additional time, or move for alternative service no later than **January 11, 2024.**

However, for the reasons below, the Court **DENIES** Plaintiffs' motion for alternative service via email on Defendants Cao Peng and Shenzhen Tongxin Technology Co. Ltd. without prejudice, and **ORDERS** Plaintiffs by **November 10, 2023**, to either show proof of service, submit a new motion for alternative service, or show cause why these Defendants should not be dismissed.

**DISCUSSION**

Plaintiffs sue Defendants for allegedly selling counterfeit goods UL Solutions registered goods on Amazon.com via the "Elvicto" and "Vitowell" "seller accounts" between July 2021 and January 2022. Dkt. 1. Plaintiffs allege Defendants established the seller accounts in 2017 providing names, addresses, email addresses, etc. In January 2022, test purchases of a smoke detector from the Elvicto and the Vitowell seller accounts showed false UL certifications. In June 2022, Amazon provided UL Solutions product samples from the Elvicto and Vitowell seller accounts that were found to have false UL certifications. Amazon also conducted its own investigation in June 2022 and found false UL certifications on products from both seller accounts.

Plaintiffs allege that UL Solutions submitted notices of infringement that Defendants were selling products bearing counterfeit certifications and avers the "selling accounts appealed the suspension" and one account provided a letter of authorization that were "falsified." After

verifying Defendants' use of counterfeit certification marks, Amazon blocked both selling accounts.

Plaintiffs seeks alternative service via email on Defendants Cao Peng and Shenzhen Tongxin Technology Co. Ltd on the following grounds:[1]

1. The Elvicto selling account is registered in the name of Defendant Shenzhen Tongxin Co ("Tongxin") and the Vitowell account is registered in the name of Defendant Shenzhen Haiyongtao Electronics Co. Ltd (Haiyongtao).

2. Defendant Shenzhen Peng Chaungxing Technology Co. (Chaungxing) is an entity controlled and owned by Defendant "Cao Peng" (Peng). Peng used Chaungxing to control Defendants Tongxin and Haiyongtao, and the selling accounts.

3. Defendants registered certain email accounts to create the seller accounts. The email addresses are the primary means of communication between Amazon and Defendants.

4. On March 23, 2023, Plaintiffs' lawyers sent emails to Defendants Peng and Tongxin at tonexin@163.com and haiyongtao@outlook.com and received no error notice of bounce back messages. Plaintiffs "believe the email addresses for Defendant Peng and Tongxin remain functional" and service at those email addresses "will provide notice" to Defendants.

5. Plaintiffs' investigation indicates Defendant Peng submitted to Amazon a Chinese National ID card. Investigation shows Peng provided an address in China, once lived at that address, but no longer resides there. Plaintiffs currently lack a valid physical address for Peng.

6. Plaintiffs' investigation indicates Defendant Tongxin provided addresses in China and in Pittsburg, which are not valid.

---

[1] *See* Dkt. 13 (Motion for Alternative Service) and Dkts. 14 and 15 (Declarations of counsel in support).

7. Plaintiffs contend the Court should grant alternative email service on Peng and Tongxin because email service is not prohibited by international agreement and due process requires only that service be reasonably calculated under the circumstances to apprise the interested parties of the pendency of an action and afford the opportunity to object. Plaintiffs contend Defendants Peng and Tongxin are believed to reside in China, and numerous courts have granted Plaintiffs leave to utilize alternative email service in similar trademark infringement actions. Plaintiffs further contend the Ninth Circuit has made email service the "preferred" method of service where Plaintiff's have been unable to obtain a valid physical address and Defendants have made email the preferred means of communication. And lastly, Plaintiffs contend email service has been deemed proper where a test email is sent to a Defendant and is not rejected as "undeliverable." Plaintiffs submit Defendants Peng and Tongxin provided email addresses when they established selling accounts and test messages sent to the email addresses in March 2023 were not rejected as undeliverable. Consequently, Plaintiff contend these email addresses will provide Defendants Peng and Tongxin notice of Plaintiffs' lawsuit.

Plaintiff bears the burden of effectuating proof of service. *See Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986). The Court finds Plaintiffs have failed to establish it would be proper to authorize alternative service via email on Defendants Peng and Tongxin. Proper service requires satisfying both Fed. R. Civ. P. 4 and constitutional due process requirements. *See generally Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014-15 (9th Cir. 2002). Rule 4 provides Plaintiffs several options to perfect service in foreign countries and grants the Court broad discretion to authorize service "by other means not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3).

Due process requires the Court to craft a method of service that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950) (collecting cases).

Plaintiffs aver Defendants reside in China. Alternative service by email is permitted but only if the moving party shows such service is reasonably calculated to provide notice and an opportunity to respond where the defendant "has embraced the modern e-business model and profited immensely from it…. and structured its business such that it could be contacted *only* via its email address." *See*, *e.g.*, *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1016–18 (9th Cir 2002).

Plaintiff cites the *Rio* decision in support of alternative email service. In the *Rio* case, Rio demanded Rio International Interlink (RII) (a Costa Rican company) to cease operating Riosports.com. RII immediately disabled the site but activated a similar site named betrio.com. Rio sued and served RII at a Miami address which turned out to be the address of RII's international courier, IEC, which was not authorized to accept service. However, after sending the summons to IEC, Rio was called by a lawyer named Carpenter. Apparently RII had received the summons and complaint from IEC and consulted with Carpenter. Carpenter was asked if he would accept service and he declined. Rio thereafter attempted to locate RII in Costa Rica to effect service but was unsuccessful. While searching for RII in Costa Rica, Rio learned RII preferred email communication and that it received "snail mail" including payment for services at the IEC address in Florida.

Unable to serve RII in Costa Rica, Rio requested and obtained permission to serve RII in three ways: "through the mail to Carpenter and IEC and via RII's email address." *Id.* at 1013. RII

obviously received notice as it appeared and then moved to dismiss for insufficient service and lack of jurisdiction. The Court of Appeals held, under the circumstances of the case, that each method of alternative service was proper, and as to service by email, stated email is the method of communication RII "utilizes and prefers." *Id.* at 1018. This language indicates the email address used to serve RII was actually being used by RII at the time of service.

In contrast to the fact RII clearly knew about and had notice that Rio had filed a lawsuit against it, Plaintiffs in this case have presented no facts showing similar knowledge by any named Defendant. Rather, Plaintiff indicates that other courts have granted alternative email service where the plaintiffs have been unable to obtain a valid physical address for defendants, defendants conduct business through the internet, and email is the defendants' preferred method of communication. *See* Dkt. 13 at 8-9. Other than the Ninth Circuit's decision in *Rio,* none of these cases are binding authority.

The Court declines to accept the proposition that the inability of a plaintiff to effect personal service on a business that uses the internet and relies upon email as a preferred method of communication automatically supports authorizing alternative service. These factors may be prerequisites before a party may request alternative service, but they do not direct automatic alternative service. Plaintiffs acknowledge this because the thrust of their argument for alternative service is that, because the email addresses used to set up the selling accounts have been recently tested, the email addresses will provide Defendants actual notice of this action. However, the test is whether the moving party has provided the Court with facts that the alternative service proposed will meet the due process notice requirement – i.e., it is reasonably calculated to provide notice and an opportunity to respond.

1   Here, what Plaintiffs provide is the observation that other courts have granted requests to
2   serve defendants via email where plaintiffs first sent "test" emails to ensure the email addresses
3   are valid. For example, Plaintiffs cite *Amazon v. Kexelwater Filters*, 2023 WL 2017002 (W.D.
4   Wash., Feb. 15, 2023). *Kexelwater* relies on several cases including *Keck v. Alibaba* 208 WL
5   3632160 (N.D. Cal. July 31, 2018). The *Keck* decision allowed email service where an
6   investigator found active storefronts on Alibaba.com or AliExpress.com for the twenty-one
7   defendant stores. Thus, test messages sent to those stores were sent to emails which were
8   actively being used at the time the order for alternative service was granted.
9   The *Kexelwater* decision also cites to *Bright Solutions for Dyslexia, Inc. v. Lee*, No. 15-
10  CV-01618-JSC, 2017 WL 10398818, at *3 (N.D. Cal. Dec. 20, 2017), report and
11  recommendation adopted, No. 15-CV-01618-CW, 2018 WL 4927702 (N.D. Cal. Mar. 26, 2018),
12  which cites *Steve McMurray Studios v. Web2 Web Marketing,* 2014 WL 187747 (N.D. Cal. May
13  9, 2014) for the proposition that an email that does not bounce back reasonably provides notice.
14  But in *McMurray*, the court deemed alternative email service valid where the defendant had
15  emailed plaintiff's counsel four times and the most recent email from the defendant was March
16  14, 2014 (less than two months before the Order). *Id*. at *2.
17  In short, email has been authorized where there are "indicia that the defendants would in
18  fact receive notice of the lawsuit if plaintiffs served them by email." *Amazon v. Kexelwater*
19  *Filters* at 4. The determination of whether there are, in fact, "indicia" that a defendant will
20  receive notice, is necessarily a fact-based one. Here, Plaintiffs fail to present facts to establish
21  indicia that email service will in fact provide Defendants notice of this lawsuit, as they claim.
22  First, Plaintiffs allege the email addresses were provided to Amazon when the selling
23  accounts were established in 2017. During the six years since the selling accounts were

established, Plaintiffs present no fact regarding Defendants Peng and Tongxin's use of the email addresses. Plaintiffs do not provide any facts Defendants used the email addresses while the selling accounts were open and active. Plaintiffs provide no facts showing these Defendants have ever sent Plaintiffs or anyone else an email message using the addresses provided in 2017.

Next, Plaintiffs' complaint alleges UL Solutions submitted notices of infringement that Defendants were selling products bearing counterfeit certifications and avers the "selling accounts appealed the suspension" and one account provided a letter of authorization that was "falsified."  But Plaintiffs provide no facts about the method of communication (or even the date of the communication), used by either UL Solutions, Amazon or Defendants.

And third, Plaintiffs' complaint alleges it blocked Defendants' selling accounts. While Plaintiffs provide no specific date, the complaint implies this occurred in 2022 when the forged UL certifications were discovered. Ostensibly, the email accounts have not been used on the Amazon site since the date the selling accounts were blocked, but Plaintiffs provide no information in this regard. Plaintiffs also provide no facts about whether the 2017 email addresses are still currently being used by the Defendants, *i.e.* after the selling accounts were blocked. There are no facts about ongoing use of the email addresses by Defendants for commercial or personal use and no facts about whether the email addresses are tied to and actively used by Defendants in connection with a financial institution such as a bank, credit union, brokerage, or payment service.

Therefore, Plaintiffs present no evidence Defendants are, in fact, currently monitoring the 2017 email accounts and no evidence Defendants are still using the email addresses. The only information Plaintiff provides to the Court is that a particular email address submitted to Amazon

in 2017 is still functioning, but not that Defendants are in fact, monitoring the email accounts or receiving the messages.

The Court concludes Plaintiffs have failed to meet their burden to demonstrate that serving Defendants via emails provided in 2017 for selling accounts that have been closed for a year or more will likely provide Defendants with notice of this lawsuit. Accordingly, the Court **DENIES** Plaintiff's motion for alternative service by email on Defendants Peng and Tongxin. Dkt. 13. Plaintiffs may renew their motion with additional evidence that demonstrates service by email is a reliable method to provide Defendants Peng and Tongxin with notice of the pendency of this action. The Court further **ORDERS** Plaintiffs by **November 10, 2023**, to either show proof of service on Peng and Tongxin, submit a new motion for alternative service, or show cause why these Defendants should not be dismissed.

DATED this 7th day of August, 2023.

BRIAN A. TSUCHIDA
United States Magistrate Judge