1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11

AMAZON.COM, INC. et al.,

CASE NO. 2:23-cv-00607-TL

12

Plaintiffs,

13

v.

ORDER ON *EX PARTE* MOTION
FOR DEFAULT JUDGMENT AND
PERMANENT INJUNCTION

CAO PENG et al.,

14

15

Defendants.

16

17       This is an action for damages and injunctive relief for trademark infringement and related

18   claims involving smoke detectors bearing counterfeit UL Solutions Certification Marks. This

19   matter comes before the Court on Plaintiffs Amazon.com, Inc., Amazon.com Services LLC

20   (together, "Amazon Plaintiffs'"), and UL LLC ("UL Solutions'") *Ex Parte* Motion for Default

21   Judgment and Permanent Injunction against Defendants Cao Peng, Shenzhen Peng Chuangxing

22   Technology Co., Ltd. ("Chuangxing"), Shenzhen Tongxin Technology Co., Ltd. ("Tongxin"),

23   Shenzhen Haiyongtao Electronics Co., Ltd. ("Haiyongtao"), Shenzhen Rictron Digital

24

Technology Co., Ltd. ("Rictron"), and Does 1–10.[1] Dkt. No. 42. Defendants have not appeared or responded to the motion. Having reviewed the relevant record, the Court GRANTS the motion.

## I.    BACKGROUND

The Western District of Washington has seen "numerous cases brought by Amazon.com, Inc., and Amazon.com Services, LLC, together with other intellectual property owners, against third parties allegedly facilitating the sale of counterfeit products in the Amazon.com store." General Order 03-23, at 1 (Mar. 7, 2023). These cases are referred to collectively as the "Counterfeit Enforcement Actions." *Id.* This is one of those cases.

### A.    The Plaintiffs

Plaintiff Amazon.com, Inc. ("Amazon.com") is a Delaware corporation with its principal place of business in Seattle, Washington. Dkt. No. 1 ¶ 7. Plaintiff Amazon.com Services LLC ("Amazon Services") is a Delaware company with its principal place of business in Seattle, Washington. *Id.* Amazon Plaintiffs own and operate the Amazon.com store (the "Amazon Store") and equivalent counterpart international stores and websites. *Id.* ¶ 2. Some products in the Amazon Store are sold directly by Amazon Plaintiffs, while others are sold by its third-party selling partners. *Id.*

Plaintiff UL LLC ("UL Solutions") is a Delaware limited liability company with its principal place of business in Northbrook, Illinois. *Id.* ¶ 8. UL Solutions is a certification organization. *Id.* ¶ 3. In this capacity, UL Solutions' services "include testing and certifying that representative samples of products satisfy applicable safety standards . . . and providing follow-up testing and inspection services to confirm that manufacturers remain in compliance with

---

[1] Plaintiffs group Defendants into two categories: the "Trafficker Defendants," comprising Cao Peng, Peng Chuangxing, Tongxin, and Haiyongtao; and the "Supplier Defendant," Rictron. Dkt. No. 42 at 11 n.2. For consistency and continuity, the Court will follow this convention here.

applicable standards." *Id.* UL Solutions owns two registered certification marks, Registration Nos. 0,782,589 (IC A) and 2,391,140 (IC A). *Id.* ¶ 4; *see also* Dkt. No. 1-1 at 2–6 (copies of registration certificates from United States Patent and Trademark Office).

**B.    The Defendants**

Defendant Cao Peng is an individual who resides in China who personally participated in and/or had the right to supervise direct, and control the wrongful conduct alleged in this Complaint. Dkt. No. 1 ¶ 10. Cao Peng owned, managed, or controlled the entities Tongxin, Haiyongtao, and Chuangxing. *Id.* ¶¶ 10–13. Rictron is a Chinese corporation. *Id.* ¶ 14.

**C.    The Allegations**

**1.    The Amazon Store**

In 2017, the Trafficker Defendants established two Selling Accounts with the Amazon Store—Elvicto and Vitowell. Dkt. No. 1 ¶¶ 36, 45, 48. To become a third-party seller in the Amazon Store, sellers are required to agree to the Amazon Services Business Solutions Agreement ("BSA"), which governs the sellers' access to and use of Amazon Plaintiffs' services and states Amazon Plaintiffs' rules for selling in the Amazon store. *Id.* ¶ 37; *see also* Dkt. No. 1-2 ("Amazon Services Business Solutions Agreement"). By entering into the BSA, each seller represents and warrants that it "will comply with all applicable Laws in [the] performance of its obligations and exercise of its rights" under the BSA. Dkt. No. 1 ¶ 37; Dkt. No. 1-2 at 5.

Under the terms of the BSA, Amazon Plaintiffs identify the sale of counterfeit goods as "deceptive, fraudulent, or illegal activity" in violation of its policies, reserving the right to withhold payments and terminate the selling account of any bad actor who engages in such conduct. Dkt. No. 1 ¶ 38; Dkt. No. 1-2 at 3–4. The BSA requires the seller to defend, indemnify, and hold harmless Amazon Plaintiffs against any claims or losses arising from the seller's "actual or alleged infringement of any Intellectual Property Rights." Dkt. No. 1-2 at 6.

The BSA also incorporates Amazon Plaintiffs' Anti-Counterfeiting Policy, which expressly prohibits the sale of counterfeit goods in the Amazon Store and describes Amazon Plaintiffs' commitment to preventing the sale and distribution of counterfeit goods in the Amazon Store as well as the consequences of doing so. Dkt. No. 1 ¶ 40; Dkt. No. 1-3 ("Amazon Anti-Counterfeiting Policy"). Upon registering as third-party sellers in the Amazon Store and establishing Selling Accounts, the Trafficker Defendants agreed not to sell or distribute counterfeit products. Dkt. No. 1 ¶ 42; Dkt. No. 1-3 at 2–3.

Additionally, under the terms of the BSA, sellers agree that information and documentation provided to Amazon in connection with their selling accounts, such as identification, contact, and banking information, will be valid, truthful, accurate, and complete. Dkt. No. 1 ¶ 41; Dkt. No. 1-2 at 3–5.

### 2. Trafficker Defendants' Selling Accounts

Defendant Tongxin is the registered owner responsible for the Elvicto Selling Account. Dkt. No. 20 ¶ 3 (Haskel Declaration). Defendants Tongxin, Cao Peng, and Chuangxing controlled and operated the Elvicto account. Dkt. No. 42 at 11 n.3.

Amazon Plaintiffs conducted two test purchases from the Elvicto Selling Account. Dkt. No. 1 ¶¶ 46–47. The first, a smoke detector, bore depictions of UL Certification Marks. *Id.* ¶ 46. Upon examination of the product, UL Solutions determined that it was not certified by UL Solutions, and that the UL Certification Marks on the product were unauthorized and counterfeit. *Id.* The second, "a sample product from the inventory of the Elvicto Selling Account," also bore depictions of the UL Certification Marks. *Id.* ¶ 47. Upon examination of the product, UL Solutions determined that the sample product was not certified by UL Solutions, and that the UL Certification Marks on the product were unauthorized and counterfeit. *Id.*

Defendant Shenzhen Haiyongtao Electronics Co. is the registered owner responsible for the Vitowell Selling Account. Dkt. No. 20 ¶ 3. Defendants Haiyongtao, Cao Peng, and Chuangxing controlled and operated the Vitowell account. Dkt. No. 42 at 11 n.3.

Amazon Plaintiffs conducted two test purchases from the Vitowell Selling Account. Dkt. No. 1 ¶¶ 49–50. The first, a smoke detector, bore depictions of UL Certification Marks. *Id.* ¶ 49. Upon examination of the product, UL Solutions determined that it was not certified by UL Solutions, and that the UL Certification Marks on the product were unauthorized and counterfeit. *Id.* The second, "a sample product from the inventory of the Vitowell Selling Account," also bore depictions of the UL Certification Marks. *Id.* ¶ 50. Upon examination of the product, UL Solutions determined that the sample product was not certified by UL Solutions, and that the UL Certification Marks on the product were unauthorized and counterfeit. *Id.*

After UL Solutions confirmed that the products obtained in the test purchases were counterfeit, Amazon Plaintiffs blocked the Elvicto and Vitowell Selling Accounts. *Id.* ¶ 59. Amazon Plaintiffs also issued "full refunds" to customers who had purchased purportedly UL-certified products from these accounts. *Id.* ¶ 60.

### 3.    Supplier Defendant

Amazon Plaintiffs conducted a test purchase of "several smoke detectors" from Supplier Defendant's "online storefront on a third-party e-commerce website." *Id.* ¶ 52. These smoke detectors were advertised and offered for sale as UL-certified. *Id.* The Supplier Defendant shipped the smoke detectors to Washington State. *Id.* Upon examination of the smoke detectors, UL Solutions determined that the products were not certified by UL Solutions, and that the UL Certification Marks on the products were counterfeit. *Id.* Further, through investigative efforts, Amazon Plaintiffs concluded that the Supplier Defendant was the source of the counterfeit products sold by the Trafficker Defendants through their Selling Accounts at the Amazon Store. *Id.* ¶ 53.

**D.    Procedural History**

On April 24, 2023, Plaintiffs commenced the instant action. Dkt. No. 1. On July 31, 2023, Plaintiffs filed an *ex parte* motion for: (1) an extension of time to effect service on Defendants Rictron, Chuangxing, and Haiyongtao, pursuant to The Hague Convention; and (2) alternative service as to Defendants Cao Peng and Tongxin. Dkt. No. 13. The Court granted the extension but denied the request for alternative service. Dkt. No. 16. At this point, Plaintiffs' service of process and the Court's entries of default judgment proceeded along two separate tracks—one with respect to Defendants Cao Peng and Tongxin; and another with respect to Defendants Rictron, Chuangxing, and Haiyongtao.

As to Defendants Cao Peng and Tongxin, on November 11, 2023, Plaintiffs renewed their *ex parte* motion for alternative service. Dkt. No. 19. The Court granted the motion (Dkt. No. 22), and on November 22, 2023, Defendants Cao Peng and Tongxin were served (Dkt. Nos. 23, 24). On January 16, 2024, Plaintiffs filed a motion for default against Defendants Cao Peng and Tongxin. Dkt. No. 27. On January 19, 2024, the Court ordered that these Defendants were in default. Dkt. No. 28.

As to Defendants Rictron, Chuangxing, and Haiyongtao, after two additional extensions (Dkt. Nos. 26, 33), these Defendants were served via The Hague Convention on December 6, 2023 (Haiyongtao), and December 7, 2023 (Rictron and Chuangxing). *See* Dkt. Nos. 34, 35, 36. On June 27, 2024, Plaintiffs filed a motion for default against Defendants Rictron, Chuangxing, and Haiyongtao. Dkt. No. 37. On July 3, 2024, the Court ordered that these Defendants were in default. Dkt. No. 38.

On October 10, 2024, Plaintiffs filed the instant *ex parte* motion for default judgment and permanent injunction against all Defendants. Dkt. No. 42.

1

## II.    LEGAL STANDARD

2      A court's decision to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616

3   F.2d 1089, 1092 (9th Cir. 1980). Default judgment is "ordinarily disfavored," because courts

4   prefer to decide "cases on their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d

5   1470, 1472 (9th Cir. 1986) (affirming district court's denial of default judgment). When

6   considering whether to exercise discretion in entering default judgments, courts may consider a

7   variety of factors, including:

8           (1) the possibility of prejudice to the plaintiff; (2) the merits of a
            plaintiff's substantive claim; (3) the sufficiency of the complaint;
9           (4) the sum of money at stake in the action; (5) the possibility of a
            dispute concerning material facts; (6) whether the default was due
10          to excusable neglect; and (7) the strong policy underlying the
            Federal Rules of Civil Procedure.

11  *Id.* at 1471–72. "None of the factors is dispositive in itself; instead, [courts] must balance all

12  seven." *Indian Hills Holdings, LLC v. Frye*, 572 F. Supp. 3d 872, 884 (S.D. Cal. 2021); *e.g.*, *Bd.*

13  *of Trs. of San Mateo Hotel Emps. & Rest. Emps. Welfare Fund v. H. Young Enters., Inc.*,

14  No. C08-2619, 2009 WL 1033665 (N.D. Cal. Apr. 13, 2009), at *4–5 (finding second and third

15  *Eitel* factors dispositive when deciding to enter default judgment).

16      Courts reviewing motions for default judgment must accept the allegations in the

17  complaint as true, except facts related to the amount of damages. *Geddes v. United Fin. Grp.*,

18  559 F.2d 557, 560 (9th Cir. 1977). "However, necessary facts not contained in the pleadings, and

19  the claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co.*

20  *of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *accord Little v. Edward Wolff & Assocs. LLC*,

21  No. C21-227, 2023 WL 6196863, at *3 (W.D. Wash. Sept. 22, 2023) (quoting *Cripps*). Damages

22  are also limited to what was reasonably pleaded. Fed. R. Civ. P. 54(c) ("A default judgment must

23  not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

24

### III.    DISCUSSION

**A.    Jurisdiction**

As an initial matter, the Court "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

**1.    Subject-Matter Jurisdiction**

The Court finds that it has subject-matter jurisdiction over this matter based on Plaintiffs' claims for trademark infringement and false designation of origin and false advertising. 15 U.S.C. §§ 1114, 1125(a); 28 U.S.C. §§ 1331, 1338. The Court also finds that it has supplemental jurisdiction over Plaintiffs' state-law claims under the Washington Consumer Protection Act, RCW 19.86, and for breach of contract. 28 U.S.C. § 1332, 1367.

**2.    Personal Jurisdiction**

Washington's long-arm statute is coextensive with the reach of federal due process. RCW 4.28.180. Therefore, to exercise personal jurisdiction over a nonresident defendant, the defendant need only have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). This means a "defendant's conduct and connection with the forum State must be such that the defendant should reasonably anticipate being haled into court there." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (internal quotation marks and citation omitted).

Accepting Plaintiffs' allegations as true, the Court finds that it has personal jurisdiction over Defendants, who "affirmatively undertook to do business with Amazon, a corporation with its principal place of business in Washington, and sold in the Amazon Store products bearing counterfeit versions of the UL Certification Marks . . . [and] shipped products bearing counterfeit versions of the UL Certification Marks to consumers in Washington." Dkt. No. 1 ¶ 17. In other

words, Defendants "transacted business using a Washington state company as its sales platform, reached out to do business with Washington residents through that platform, and sold counterfeit products to Washington residents." *Amazon.com, Inc. v. Wong*, No. C19-990, 2024 WL 553695, at *2 (W.D. Wash. Feb. 12, 2024); *accord Amazon.com, Inc. v. Sirowl Tech.*, No. C20-1217, 2022 WL 19000499, at *1 (W.D. Wash. Oct. 3, 2022). Further, "Plaintiffs' claims arose from these contacts with Washington state." *Id.* Defendants also "entered into an ongoing contractual relationship with a Washington State company . . . and then violated that contractual relationship." *Amazon.com, Inc. v. Dai*, No. C21-170, 2023 WL 6233835, at *2 (W.D. Wash. Sept. 26, 2023).[2]

**B.      Propriety of Default Judgment**

Considering the *Eitel* factors, the Court finds that entry of default judgment is appropriate.

### 1.      Factor One: Prejudice to Plaintiffs

Without entry of default judgment, Plaintiffs will be prejudiced. Plaintiffs have attempted to litigate this case and vindicate their rights under federal and state law against Defendants. But Defendants have failed to appear or participate in this litigation, despite having been properly served. "Without default judgment, Plaintiffs will suffer prejudice because they will 'be denied the right to judicial resolution' of their claims and will be 'without other recourse for recovery.'" *Wong*, 2024 WL 553695, at *3 (quoting *Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005)). This factor favors entry of default judgment.

---

[2] The Court need not reach Plaintiffs' alternative basis for asserting personal jurisdiction: the inclusion of a forum-selection clause in the BSA. *See* Dkt. No. 42 at 13.

2.        **Factors Two and Three: Merits of Plaintiffs' Claims and Sufficiency of Complaint**

Taking the allegations in Plaintiffs' complaint as true, Plaintiffs have successfully pleaded potentially meritorious claims. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (explaining how the Ninth Circuit has suggested that these two *Eitel* factors require plaintiffs to state a claim on which they can recover). The Court reviews each claim in turn.

a.        ***Claim One: Trademark Infringement***

Plaintiff UL Solutions brings a claim for trademark infringement against all Defendants. Dkt. No. 1 ¶¶ 61–67. To prevail on a claim for trademark infringement under 15 U.S.C. § 1114, Plaintiff must show that Defendants used:

> (1) a reproduction, counterfeit, copy or colorable imitation of [its] registered trademark, (2) without its consent, (3) in commerce, (4) in connection with the sale, offering for sale, distribution or advertising of any goods, (5) where such use is likely to cause confusion, or to cause a mistake or to deceive.

*Wong*, 2024 WL 553695, at *4 (quoting *Amazon.com v. Kurth*, No. C18-353, 2019 WL 3426064, at *2 (W.D. Wash. July 30, 2019)). "Likelihood of confusion exists when consumers viewing the mark would probably assume that the goods it represents are associated with the source of a different product identified by a similar mark." *Id.* (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608 (9th Cir. 2005)). Courts generally evaluate eight factors to determine whether confusion is likely:

> 1) the strength of the mark; 2) proximity or relatedness of the goods; 3) the similarity of the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) the degree of care customers are likely to exercise in purchasing the goods; 7) the defendant's intent in selecting the mark; and 8) the likelihood of expansion into other markets.

*KP Permanent Make-Up*, 408 F.3d at 608 (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)). "Where a defendant uses a counterfeit mark, however, courts both within and outside the Ninth Circuit presume a likelihood of consumer confusion." *Wong*, 2024 WL 553695, at *4 (citing *Coach, Inc. v. Pegasus Theater Shops*, No. C12-1631, 2013 WL 5406220, at *3 (W.D. Wash. Sept. 25, 2013) (compiling cases)).

Here, Plaintiff UL Solutions alleges that it owns the UL Certification Marks, Registration Nos. 0,782,589 (IC A) and 2,391,140 (IC A). Dkt. No. 1 ¶ 4; *see also* Dkt. No. 1-1. Defendants manufactured, advertised, marketed, offered, and/or sold products bearing counterfeit versions of the UL Certification Marks without their consent. Dkt. No. 1 ¶¶ 5, 43–53, 65. Plaintiff UL Solutions examined test-purchased products from the Selling Accounts that were shipped interstate and determined that the products, despite bearing purported UL Certification Marks, were not in fact certified by UL Solutions. *Id.* ¶¶ 43–53. The UL Certification Marks on the products were therefore unauthorized and counterfeit. *See id.* Moreover, the Supplier Defendant supplied to the Trafficker Defendants the products bearing counterfeit UL Certification Marks that the Trafficker Defendants sold through the Selling Accounts. *Id.* ¶¶ 14, 19–20, 50–53.

Plaintiff UL Solutions uses its certification marks to distinguish those products it has certified from similar products and related items that have not received such certification. *Id.* ¶¶ 3–4, 63. Through Plaintiff UL Solutions' long, continuous, and exclusive use of the UL Certification Marks identified in this Complaint, the certification marks have come to mean, and are understood by customers and the public to signify, products certified by UL Solutions. *Id.* ¶¶ 3, 64. Further, the UL certification marks have attained national and global reputations for technical expertise and integrity and have become symbols of trust and objectivity. *Id.* ¶ 3. Accepting these allegations as true, the Court finds that Defendants used the counterfeit trademarks in an infringing manner, and that it is likely that a reasonable customer would

confuse the products sold through Defendants' Selling Accounts in the Amazon Store with

genuinely UL-certified products. Therefore, Plaintiff UL Solutions has stated a claim against

Defendants for trademark infringement in violation of 15 U.S.C. § 1114, and the second and

third *Eitel* factors weigh in favor of default judgment on that claim.

### b. *Claims Two and Three: False Designation of Origin and False Advertising*

Plaintiff UL Solutions brings claims against all Defendants for false designation of origin

and false advertising under 15 U.S.C. § 1125(a). Dkt. No. 1 ¶¶ 68–76. Plaintiff Amazon brings

claims against the Trafficker Defendants for false designation of origin and false advertising

under 15 U.S.C. § 1125(a). *Id.* ¶¶ 77–84.

To state a claim for false designation of origin, each Plaintiff must allege that

Defendants: "(1) used in commerce (2) any word, false designation of origin, false or misleading

description, or representation of fact, which (3) is likely to cause confusion or mistake, or to

deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Wong*,

2024 WL 553695, at *5 (quoting *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170

(N.D. Cal. 2015)). "Although [Plaintiff UL Solutions] is the trademark holder in this case and

not Amazon.com, under § 1125(a), '"any person who believes that he or she is likely to be

damaged" by a defendant's false advertising' may sue." *Dai*, 2023 WL 6233835, at *3 (quoting

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014)).

### (1)    Plaintiff UL Solutions

Here, Plaintiff UL Solutions alleges that Defendants advertised, marketed, offered, and

sold counterfeit smoke detectors in the Amazon Store bearing the UL Certification marks,

without authorization. Dkt. No. 1 ¶¶ 5, 46–47, 49–50, 52–53, 71–72. This unauthorized misuse

of the UL Certification Marks misled consumers as to the origin and authenticity of the goods

bearing the unauthorized marks and deceived customers into believing that the products were

authentic when they were counterfeit. *Id.* ¶¶ 5, 72. Defendants' unauthorized use of the UL

Certification Marks has undermined Plaintiff UL Solutions' ability to safeguard its brand

goodwill and reputation, and it has compelled Plaintiff UL Solutions to expend significant

resources to investigate and combat Defendants' wrongdoing. *Id.* ¶¶ 6, 43–53, 72, 75. Therefore,

Plaintiff UL Solutions has stated a claim for false designation of origin. *See Wong*, 2024 WL

553695, at *5–6 (holding the same); *Amazon.com, Inc. v. White*, No. C20-1773, 2022 WL

1641423, at *3 (W.D. Wash. May 24, 2022) (same).

(2)    <u>Amazon Plaintiffs</u>

Here, Amazon Plaintiffs allege that the Trafficker Defendants deceived them about the

authenticity of the products they were advertising, marketing, offering, and selling, in violation

of the BSA and Amazon's Anti-Counterfeiting Policies. Dkt. No. 1 ¶ 79. Defendants' acts

undermine and jeopardize consumer trust in Amazon Plaintiffs and the Amazon Store. *Id.* ¶¶ 57,

82. Therefore, Amazon Plaintiffs have stated a claim for false designation of origin. *See Dai*,

2023 WL 6233835, at *3 (holding the same); *Sirowl Tech.*, 2022 WL 19000499, at *3 (same);

*White*, 2022 WL 1641423, at *3 (same).

    **c.**    ***Claim Four: Contributory False Designation of Origin and False Advertising***

Amazon Plaintiffs bring a claim against Supplier Defendant of false designation of origin

and false advertising under 15 U.S.C. § 1125(a). Dkt. No. 1 ¶¶ 85–97. "Contributory copyright

infringement is a form of secondary liability with roots in the tort-law concepts of enterprise

liability and imputed intent." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794–95 (9th

Cir. 2007). To prove their contributory false designation claim against Supplier Defendant, the

Amazon Plaintiffs must establish that this defendant: "(1) had knowledge of a third party's

1    infringing activity, and (2) induced, caused, or materially contributed to the infringing conduct."

2    *Amazon.com, Inc. v. Li Xinjuan*, No. C22-840, 2024 WL 4201975, at *5 (W.D. Wash. Sept. 16,

3    2024) (citing *Perfect 10, Inc.*, 494 F.3d at 795). "In an Internet context, [the Ninth Circuit has]

4    found contributory liability when the defendant 'engages in personal conduct that encourages or

5    assists the infringement.'" *Perfect 10, Inc.*, 494 F.3d at 795 (quoting *A & M Records, Inc. v.*

6    *Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001)). "When the defendant supplies a service, the

7    court considers 'the extent of control exercised by the defendant over the third party's means of

8    infringement.'" *Li Xinjuan*, 2024 WL 4201975, at *5 (citing *Lockheed Martin Corp. v. Network*

9    *Sols., Inc.*, 194 F.3d 980, 984 (9th Cir. 1999)). "Plaintiffs asserting contributory trademark

10   infringement claims must prove that defendants provided their services with actual or

11   constructive knowledge that the users of their services were engaging in trademark

12   infringement." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 943 (9th Cir.

13   2011). "An express finding of intent is not required." *Id.*

14           As alleged, Amazon has proved its contributory false designation of origin and false

15   advertising claim by demonstrating the following: (1) Supplier Defendant had actual knowledge

16   of the Trafficker Defendants' sale of products bearing the counterfeit UL Solutions Certification

17   Marks (Dkt. No. 1 ¶¶ 5, 53, 88–92); and (2) Supplier Defendant contributed to the Trafficker

18   Defendants' wrongdoing by supplying Trafficker Defendants with the counterfeit products (*id.*

19   ¶¶ 51, 89–90). "Without the Supplier Defendant, the Trafficker Defendants would not have sold

20   the smoke alarms bearing counterfeit UL Certification Marks in the Amazon Store." *Id.* ¶ 90.

21   Therefore, Amazon Plaintiffs have stated a claim for contributory false designation of origin and

22   false advertising against Supplier Defendant. *See Li Xinjuan*, 2024 WL 4201975, at 5 (holding

23   the same).

24

####      d.      *Claim Five: Violation of Washington Consumer Protection Act*

All Plaintiffs bring a claim under the Washington Consumer Protection Act ("WCPA") against all Defendants. Dkt. No. 1 ¶¶ 98–102. To state a claim under the WCPA, Plaintiffs must allege: "(1) an unfair or deceptive act or practice; (2) occurring in the conduct of trade or commerce; (3) affecting the public interest; (4) injuring its business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered. *Dai*, 2023 WL 6233835, at *4 (quoting *BBC Grp. NV LLC v. Island Life Rest. Grp. LLC*, No. C18-1011, 2020 WL 758070, at *2 (W.D. Wash. Feb. 14, 2020)). "Absent unusual circumstances, the analysis of a CPA claim will follow that of the [federal] copyright trademark infringement and unfair competition claims; it will turn on the likelihood of confusion regarding a protectable mark." *Id.* (quoting *Safeworks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010)).

Here, "because analysis of a CPA claim tracks that for a federal trademark claim, and there do not appear to be any unusual circumstances dictating a different result, Plaintiffs have already demonstrated the basis for their CPA claim." *Id.*; *see also supra* Section III.B.2.a. Therefore, Plaintiffs have stated a claim under the WCPA.

####      e.      *Breach of Contract*

Finally, Plaintiff Amazon Services brings a claim for breach of contract against Trafficker Defendants. Dkt. No. 1 ¶¶ 103–108. To state a claim for breach of contract, Amazon Services must show: "(1) the existence of a contractual duty, (2) breach, (3) causation, and (4) damages." *Kurth*, 2019 WL 3426064, at *3 (citing *Larson v. Union Inv. & Loan Co.*, 168 Wash. 5, 10 P.2d 557 (1932)).

Here, Plaintiff Amazon Services alleges that the Trafficker Defendants entered into the BSA, which incorporated by reference Amazon's Anti-Counterfeiting Policy, to which the Trafficker Defendants agreed to be bound. Dkt. No. 1 ¶¶ 36–42, 104. The BSA required the

Trafficker Defendants not to sell counterfeit products on the Amazon Store and to provide accurate information in connection with their selling accounts. *Id.* ¶¶ 38–42. Trafficker Defendants materially breached the BSA by selling products bearing counterfeit UL Solutions Certification Marks. *Id.* ¶¶ 46–47, 49–50, 106. As a result, Plaintiff Amazon Services paid $868,393 to refund customers who had purchased counterfeit products. Dkt. No. 42 at 30. Therefore, Plaintiff Amazon Services has stated a claim for breach of contract.

### 3.    Factor Four: Sum of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of [the] defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. Here, Plaintiffs ask the Court to award UL Solutions statutory damages of $3,800,000 against Defendants, jointly and severally. Dkt. No. 42 at 29. This amount is within the range of statutory damages authorized by Congress for the willful use of a counterfeit mark. *See* 15 U.S.C. § 1117(c)(2) (authorizing the court to award up to $2,000,000 per counterfeit mark); *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (holding that complaint's willful infringement allegations were deemed true after default); Dkt. No. 1 ¶¶ 5, 47, 50–51 (alleging Defendants willfully infringed two UL Solutions Certification Marks). Further, Plaintiffs ask the Court to award Amazon Plaintiffs actual damages of $868,393 against the Trafficker Defendants. Dkt. No. 42 at 30. This amount represents the sum that Amazon Plaintiffs refunded to customers who purchased smoke detectors bearing the counterfeit certification marks. Dkt. No. 45 ¶ 4. Under Washington law, "[o]ne who fails to perform his contract is justly bound to make good all damages that accrue naturally from the breach." *Rathke v. Roberts*, 33 Wn.2d 858, 869, 207 P.2d 716 (1949). Therefore, $868,393 represents reasonable actual damages for Defendants' breach under Washington law. The Court thus concludes that, while large, Plaintiffs' requested damages are not so unreasonable relative to the seriousness of the

1 conduct alleged in their complaint as to weigh against entry of default judgment. *See Farmer v.*

2 *Thar Process, Inc.*, 705 F. Supp. 3d 1218 (D. Or. 2023) (finding that "[w]eighed in the balance,"

3 a "considerable" sum of money that is "commensurate with the seriousness of the claims . . . will

4 not preclude default judgment"); *BBK Tobacco & Foods, LLP v. Aims Grp. USA Corp.*,

5 No. C22-1648, 2024 WL 1160715, at *7 (D. Nev. Mar. 15, 2024) (finding that fourth *Eitel* factor

6 weighs in favor of default judgment where damages are "a large sum, but . . . in direct proportion

7 to the harm caused").

8    **4.    Factor Five: Possibility of Dispute of Material Facts**

9        There is little possibility that the core, material facts here are in dispute. "When default

10 has been entered, courts find that there is no longer the possibility of a dispute concerning

11 material facts because the court must take the plaintiff's factual allegations as true." *Curtis*, 33 F.

12 Supp. 3d at 1212. Not only have Defendants failed to appear in this action, but Plaintiffs have

13 provided detailed evidence in support of their claims that is likely difficult to rebut. There is no

14 evidence suggesting a dispute could arise. This factor favors entry of default judgment.

15    **5.    Factor Six: Whether Default is Due to Excusable Neglect**

16        There is no evidence that Defendants' failure to appear is due to excusable neglect.

17 Indeed, Plaintiffs provide evidence indicating that Defendants were properly served yet still

18 failed to appear in this action. *See* Dkt. Nos. 23, 24, 34, 35, 36. This factor favors entry of default

19 judgment.

20    **6.    Factor Seven: Strong Policy in Favor of Decision on the Merits**

21        The Court maintains a strong policy preference in favor of resolution of Plaintiffs' claims

22 on the merits. "Where, as here, a defendant fails to appear or defend itself in the action, however,

23 the policy favoring decisions on the merits is not dispositive." *Dong*, 2024 WL 775900, at *7

24

(citing *Wong*, 2024 WL 553695, at *7). Defendants' decision not to appear in this case vitiates against this policy. This factor favors entry of default judgment.

Therefore, Plaintiffs' motion for default judgment is GRANTED, and judgment is ENTERED accordingly.

## C.    Damages

### 1.    Statutory Damages for Plaintiff UL Solutions Against All Defendants for Violation of the Lanham Act

"Under the Lanham Act, a plaintiff may elect whether to recover its actual damages caused by the defendants' use of a counterfeit mark or statutory damages." *Dong*, 2024 WL 775900, at *7 (citing *Wong*, 2024 WL 553695, at *7). A plaintiff may recover statutory damages of not less than $1,000 and not more than $200,000 per infringed mark. 15 U.S.C. § 1117(c)(1). However, "[i]f the court finds that a defendant's use of a counterfeit mark was willful, it has discretion to award statutory damages of 'not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.'" *Wong*, 2024 WL 553695, at *7 (quoting 15 U.S.C. § 1117(c)(2)). "[S]tatutory damages may compensate the victim, penalize the wrongdoer, deter future wrongdoing, or serve all of those purposes." *Id.* (quoting *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1008 (9th Cir. 2023)). "The plaintiff, however, 'is not entitled to a windfall.'" *Id.* (quoting *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102 (N.D. Cal. 2014)). Because Plaintiffs have alleged the willful infringement of the UL Solutions Certification Marks (*see, e.g.*, Dkt. No. 1 ¶¶ 6, 57, 91; *see also Derek Andrew, Inc.*, 528 F.3d at 702 (deeming admitted well-pleaded allegations of willfulness to which defendants have not responded)), the Court may award up to $4,000,000 in statutory damages.

Here, Plaintiff UL Solutions seeks $3,800,000 in statutory damages against Defendants, jointly and severally. Dkt. No. 42 at 29. This award reflects evidence that Defendants sold a total

of $1,266,781 in counterfeit UL-certified products. Dkt. No. 45 ¶ 3 (detailing aggregate sales by selling accounts). Plaintiffs assert that $3,800,000 is "approximately 3 times Defendants' total counterfeit sales and is conservative, reasonable, and in line with other awards in th[is] District." Dkt. No. 42 at 29.

The Court finds that Plaintiff UL Solutions' request is appropriate and just. Defendants engaged in an intentional and coordinated effort to sell counterfeit UL-certified products in the Amazon Store, thus deceiving customers, misusing the UL Solutions Certification Marks, and tarnishing the reputation of all Plaintiffs. *See* Dkt. No. 1 ¶¶ 5, 55, 57. Plaintiff UL Solutions' damages request is "consistent with the amounts awarded by other courts in this District for similar conduct, proportional to [UL Solutions'] actual damages, and sufficient to deter [Defendants] from further willful infringement, but is not so great as to result in a windfall to [UL Solutions]." *Dong*, 2024 WL 775000, at *8 (quoting *Wong*, 2024 WL 553695, at *8); *see also Dai*, 2023 WL 6233835, at *5 (awarding damages three times the aggregate sales of counterfeit products in the Amazon Store); *Sirowl Tech.*, 2022 WL 19000499, at *5 (same); *White*, 2022 WL 1641423, at *5 (same).

Therefore the Court AWARDS Plaintiff UL Solutions $3,800,000 in statutory damages against all Defendants, jointly and severally.

### 2.    Actual Damages for Amazon Plaintiffs Against Trafficker Defendants for Breach of Contract

In addition to statutory damages for violating the Lanham Act, Amazon Plaintiffs seek actual damages against the Trafficker Defendants for breach of contract. Dkt. No. 42 at 30–31. "The general measure of damages for breach of contract is that the injured party is entitled to: (1) recovery of all damages that accrue naturally form the breach, and (2) to be put into as good a pecuniary position as he would have had if the contract had been performed." *Entry Select Ins.*

*Co. v. Silver Arrow Cars, Ltd.*, No. C19-0598, 2020 WL 1847749 (W.D. Wash. Apr. 13, 2020)

(citing *Diedrick v. Sch. Dist. 81*, 87 Wn.2d 598, 610, 555 P.2d 825 (1976)). Here, Amazon

Plaintiffs seek $868,393 in actual damages that they suffered as a result of the Trafficker

Defendants' breaches of the BSA. Dkt. No. 42 at 30.

The Court finds that Amazon Plaintiffs' request is appropriate and just. The Trafficker

Defendants agreed to "defend, indemnify, and hold harmless Amazon . . . against any . . . loss

[or] damage . . . arising from or related to . . . [Trafficker Defendants'] Products, including the

. . . refund . . . thereof." *Id.* Amazon Plaintiffs issued refunds to customers who had purchased

counterfeit products through the Vitowell and Elvicto selling accounts, in the total of $868,393.

*Id.*; Dkt. No. 45 ¶ 4. Thus, Amazon Plaintiffs' damages request is consistent with the amount

they are entitled to under the BSA.

Therefore, the Court AWARDS the Amazon Plaintiffs the requested total amount of

$868,393 in actual damages against the Trafficker Defendants.

**D.    Permanent Injunction for All Plaintiffs**

The Lanham Act authorizes "the 'power to grant injunctions accordingly to principles of

equity and upon such terms as the court may deem reasonable, to prevent the violation of any

right' of the trademark owner." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir.

2006). The WCPA similarly authorizes injunctions against violations of the statute.

RCW 19.86.090.

In trademark cases, courts apply "traditional equitable principles" in deciding whether to

grant permanent injunctive relief. *Reno Air Racing*, 452 F.3d at 1137 (quoting *eBay Inc. v.

MercExchange, LLC*, 547 U.S. 388, 393 (2006)). That is, a plaintiff must demonstrate: "(1) that

it has suffered an irreparable injury; (2) that remedies available at law, such as monetary

damages, are inadequate to compensate for that injury; (3) that, considering the balance of

hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* at 1137 n.11 (quoting *eBay*, 547 U.S. at 391). A trademark holder is entitled to a rebuttable presumption of irreparable harm upon a finding of a violation. 15 U.S.C. § 1116(a).

Here, Plaintiffs seek a permanent injunction enjoining Defendants from their infringing uses of the UL Certification Marks and from selling counterfeit products in Amazon's stores. Dkt. No. 42 at 31. Specifically, Plaintiffs seek an order:

> Permanently enjoining Defendants, their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them, who receive actual notice of this order, from:
>
> > a. selling counterfeit or infringing products in Amazon's stores or to Amazon sellers for resale in Amazon's stores;
> >
> > b. selling counterfeit or infringing products to Amazon or any Amazon affiliate;
> >
> > c. importing, manufacturing, producing, distributing, circulating, offering to sell, selling, promoting, or displaying any product using any simulation, reproduction, counterfeit, copy, or colorable imitation of UL Solutions' Certification Marks, or which otherwise infringes UL Solutions' intellectual property, in any store or in any medium; and
> >
> > d. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (c) above.

*Id.* Plaintiffs argue that all four *eBay* factors weigh in favor of a permanent injunction. *Id.* at 33–36. The Court agrees.

First, Plaintiffs are entitled to a rebuttable presumption of irreparable harm, as they have alleged (and the Court accepts as true) that Defendants have committed trademark infringement and false designation of origin, among other claims. *See* 15 U.S.C. § 1116(a). Defendants present no evidence to rebut this presumption, and the Court finds no such evidence in the record.

Second, remedies at law are inadequate to compensate Plaintiffs, who have alleged harm to their reputation and goodwill. "Harm resulting from lost customer goodwill 'is neither easily calculable, nor easily compensable' and thus cannot be remedied by a monetary award." *Dong*, 2024 WL 775000, at *10 (quoting *Wong*, 2024 WL 553695, at *10). Moreover, Defendants' failure to appear "suggests that their infringing behavior may continue absent an injunction." *Id.* (citing *Wong*, 2024 WL 553695, at *10).

Third, the balance of hardships strongly favors Plaintiffs. Without an injunction, Plaintiffs may suffer further harm to their reputations through counterfeit sales. "On the other hand, because Defendants never had a right to infringe [Plaintiff UL Solutions' Certification Marks] in the first place, they will suffer no harm from an injunction prohibiting unlawful infringement in the future." *Id.* (citing *Wong*, 2024 WL 553695, at *10); *see also T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1133 (W.D. Wash. 2012) (holding defendants had "no legitimate interest" in continuing deceptive conduct).

Finally, a permanent injunction would serve the public interest "in protecting trademark holders' rights and minimizing the confusion caused by the presence of counterfeit products in the marketplace." *Wong*, 2024 WL 553695, at *10 (citing *Treemo, Inc. v. Flipboard, Inc.*, 53 F. Supp. 3d 1342, 1368 (W.D. Wash. 2014)).

Therefore, the Court PERMANENTLY ENJOINS Defendants on the terms requested.

## IV.    CONCLUSION

Accordingly, it is hereby ORDERED:

(1)    Plaintiffs' *Ex Parte* Motion for Default Judgment and Permanent Injunction against Defendants (Dkt. No. 42) is GRANTED.

(2)    Judgment is ENTERED as to all claims.

(3)    Plaintiff UL LLC is AWARDED statutory damages of **$3,800,000** against all Defendants, jointly and severally.

(4)    Plaintiffs Amazon.com, Inc., and Amazon.com Services LLC are jointly AWARDED actual damages of **$868,393**, against Defendants Cao Peng, Shenzhen Peng Chuangxing Technology Co., Ltd., Shenzhen Tongxin Technology Co., Ltd., and Shenzhen Haiyongtao Electronics Co., Ltd., jointly and severally.

(5)    Defendants and their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of this order, are PERMANENTLY ENJOINED from:

    (a)    selling counterfeit or infringing products in Amazon's stores or to Amazon sellers for resale in Amazon's stores;

    (b)    selling counterfeit or infringing products to Amazon or any Amazon affiliate;

    (c)    importing, manufacturing, producing, distributing, circulating, offering to sell, selling, promoting, or displaying any product using any simulation, reproduction, counterfeit, copy, or colorable imitation of UL Solutions' Certification Marks, or which otherwise infringes UL Solutions' intellectual property, in any store or in any medium; and

    (d)    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed in (a) through (c) above.

(6)    The Court retains jurisdiction over this case for the purpose of enforcing this Order and Injunction, and for any supplemental proceedings that may be authorized by law.

(7)    Plaintiffs' counsel is directed to serve a copy of this Order and Injunction on Defendants' last known addresses, which Plaintiffs used to complete service.

Dated this 8th day of November 2024.

Tana Lin
United States District Judge